**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

GARY ORTEGA, individually, and on behalf of
all others similarly situated,

                 Plaintiff,

v.

WATERFORD COUNTRY SCHOOL, INC.,

                 Defendant.

**Case No. 3:24-cv-01334-MPS**

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION……………………………………………………………….....1

II.    SUMMARY OF RELEVANT FACTUAL BACKGROUND…………………….…..3

    A.    Summary of Investigation and Information Exchanged.................................................. 3

    B.    Summary of Class Counsel's Experience and Prior Cases............................................ 3

    C.    Summary of Risks, Expenses, Complexity of Further Litigation................................. 3

    D.    Consideration Received in Exchange for Released Claims ........................................... 4

III.   ARGUMENT**Error! Bookmark not defined.**4

    A.    The Settlement Agreement is Procedurally Fair ........................................................... 6

          1.    *Plaintiff and Class Counsel Adequately Represent Class Interests* .................... 6

          2.    *The Settlement Agreement is the Product of Arm's Length Negotiations* ........... 7

    B.    The Settlement Agreement is Substantively Fair ...........Error! Bookmark not defined.

          1.    *The Grinnell Factors and FRCP Rule 23 Support Approval of the Settlement Agreement* ............................................................Error! Bookmark not defined.

             i.  The Costs, Risks and Delay of Trial and Appeal Favor Settlement.......Error! Bookmark not defined.

             ii.  The Remaining *Grinnell* Factors Support Approval of Settlement     ……...10

          2.    *The Settlement Provides an Effective Method for Distributing Relief and Treats Class Members Equitably* .....................................Error! Bookmark not defined.

          3.    *The Scope of Release of the Settlement Weighs in Favor of Approval*........Error! Bookmark not defined.

    C.    The Court Should Condtionally Certify the Proposed Settlement Class  …………....14

          1.    *The Requirements of FRCP Rule 23(a) are Staisfied*..........Error! Bookmark not defined.

             i.    The Settlement Class is so Numbers the Joinder of Individual Members is Impracticable.................................................Error! Bookmark not defined.

             ii.    There are Questions of Law and Fact Common to the Settlement Class..14

             iii.    Representative Plaintiff's Claims are Typical of the Claims of the Settlement Class...........................................Error! Bookmark not defined.

             iv.    The Interest of Plaintiff and Class Counsel are Aligned with the Interests of the Settlement Class............................**Error! Bookmark not defined.**

          2.    *The Requirements of Rule 23(b)(3) are Satisfied* ............ **Error! Bookmark not defined.**

             i.    Questions Common to All Settlement Class Members Predominate Over any Potential Individual Questions...............Error! Bookmark not defined.

             ii.    A Class Action is the Superior Method to Fairly and Efficiently Adjudicate  the Matter…..……………………………………………..Error! Bookmark not defined.

    D.    The Notice Plan and Class Notice Should Be Approved………………..………....18

i

IV.    PROPOSED SCHEDULE……………………………………………..…20

V.    CONCLUSION…………………………………………………………...20

## TABLE OF AUTHORITIES

**CASES**

*Amchem Prod., Inc. v. Windsor.,*
   521 U.S. 591 (1997). ................................................................................. 17

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007)........................................................................... 6

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)..................................................................... 7, 8

*Fogarazzao v. Lehman Bros.,*
   232 F.R.D. 176, 180 (S.D.N.Y. 2005). ....................................................... 15

*Frank v. Eastman Kodak Co,*
   228 F.R.D. at 186 (W.D.N.Y. 2005)........................................................... 10

*George v. Shamrock Saloon II, LLC,*
   2021 WL 3188314 (S.D.N.Y. July 28, 2021). ....................................... 20

*Gilliam v. Addicts Rehab. Ctr. Fund,*
   No. 05-3452, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008). ..................... 10, 11

*Giroux v. Essex Property Trust,*
   No. 16-cv-01722, 2019 WL 1207301 (N.D. Cal. Mar. 14, 2018). ..................... 12

*In re Am. Bank Note Holographics, Inc.,*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................... 11, 12

*In re v. Cent. Hanover Bank & Tr. Co.,*
   339 U.S. 306 (1950)................................................................................. 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig,*
   216 F.R.D. 197 (D. Me. 2003)..................................................................... 9, 12

*In re IMAX Sec. Litig.,*
   283 F.R.D. 178 (S.D.N.Y. 2012);. ............................................................. 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
   246 F.R.D. 156 (S.D.N.Y. 2007). ............................................................. 11, 18

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.,*
   241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007). ............................................... 16

*In re Namenda Direct Purchaser Antitrust Litig,*
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)......................................................... 8

*In re Nassau Cty. Strip Search Cases,*

461 F.3d 219 (2d Cir. 2006)....................................................................................................17

*In re Nissan Radiator/Transmission Cooler Litig*,
No. 10-cv-07493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013);. ....................................15

*In re Packaged Ice Antitrust Litig*,
127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001)......................................................................11

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*.,
330 F.R.D. at 42 n.41 (E.D.N.Y. 2019). ..........................................................................13

*In re Sinus Buster Products Consumer Litig*.,
No. 12-cv-02429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014). .....................................11

*In re Sonic Corp. Customer Data Sec. Breach Litig*,
No. 1:17-md2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019).....................................9

*In re Sonic Corp. Customer Data Sec. Breach Litig*,
No. 1:17-md2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019).....................................9

*In re Synchrony Fin. Sec. Litig*,
No. 18-cv-01818, 2023 WL 4992933 (D. Conn. Aug. 4, 2023)..........................................7

*In re Tyco Int'l, Ltd. Multidistrict Litig*.,
535 F. Supp. 2d 249 (D.N.H. 2007)....................................................................................9

*In re Yahoo! Inc. Customer Data Security Breach Litig*.,
No. 16-MD02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020)........................................9

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)......................................................................................14, 16

*Martens v. Smith Barney Inc*.,
181 F.R.D. 243 (S.D.N.Y. 1998)... ...................................................................................16

*Moses v. New York Times Co*.,
79 F.4th 235 (2d Cir. 2023).. ........................................................................................5, 7

*Mullane v. Cent. Hanover Bank & Tr. Co*.,
*339 U.S. 306, 314* (1950)...............................................................................................19

*Newman v. Stein*,
464 F.2d 689, 693 (2d Cir. 1972).....................................................................................10

*Reid v. Donelan*,
297 F.R.D. 185 (D. Mass. 2014)........................................................................................6

*Roberts v. TJX Companies, Inc*.,
No. 13-cv13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016). .....................................10

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)..............................................................................................15

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015)................................................................................................15

iii

*Tart v. Lions Gate Entertainment Corp.,*
 No. 14-8004, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015)..........................................17, 18

*TBK Partners, Ltd. v. Western Union Corp.,*
 675 F.2d 456 (2d Cir. 1982)...................................................................................................13

*Viafara v. MCIZ Corp,*
 No. 12-cv-07452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014). ..................................11, 12

*Wal-Mart Stores, Inc. v. Dukes.,*
 564 U.S. 338, 359 (2011)...............................................................................................6, 15

*Zeltser v. Merrill Lynch & Co., Incr.,*
 No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Apr. 28, 2017). .............................................18

**STATUTES/RULES**

Fed. R. Civ. P. 23 .................................................................................................5, 8, 14, 15, 16

**SECONDARY AUTHORITIES**

*William B. Rubenstein*, 4 Newberg On Class Actions § 13:50 (5th ed. 2020) ....................6, 12

## I.    INTRODUCTION

This Class Action arises out of a cyberattack and data breach (the "Data Incident") perpetrated against Defendant Waterford Country School, Inc. ("Defendant"), a Connecticut non-profit corporation that operates a school for children with special education needs and families at risk. The Data Incident occurred between September 17, 2023 and October 5, 2023, and on August 8, 2024 Defendant disclosed to Plaintiff and about 7,275 Class Members that their highly sensitive personally identifiable information ("PII") and protected health information ("PHI") including, without limitation: Social Security numbers, dates of birth, LINK/Family ID numbers, medical information and health insurance information was compromised. As a result of the Data Breach, Plaintiff filed a Class Action Complaint on August 20, 2024, which asserts negligence, breach of implied contract and breach of the implied covenant of good faith and fair dealing against Defendant. Defendant maintains that it is not liable for the claims asserted.

Since the inception of this case, Plaintiff and Defendant (collectively, the "Parties"), by and through their counsel, have engaged in arm's length negotiations to finalize this agreement in principle on December 13, 2024, which was finally executed in the attached Settlement Agreement on January 15, 2025.[1] See Declaration of Laura Van Note, Esq. in Support of Plaintiff's Motion for Preliminary Approval ("Van Note" Decl.") ¶ 8.

The Settlement Agreement provides timely and significant benefits to Settlement Class Members whose information was exposed as a result of the Data Incident and was achieved after hard-fought extensive negotiations. Notice of this Settlement may be issued as the Court should find that the Settlement is procedurally and substantively fair under Rule 23(e) of the Federal Rules of Civil Procedure and that the proposed class may be certified for settlement purposes.

---

[1] Please find a true and accurate copy the fully executed Settlement Agreement attached to the Van Note Decl. as **Exhibit A.**

Accordingly, pursuant to Rule 23, Plaintiff asks that the Court enter an Order that:

(a)    Preliminarily approves the Settlement, subject to final approval;

(b)    Conditionally certifies the Settlement Class with respect to the claims against Defendant;

(c)    Appoints Plaintiff as a Class Representative for the Settlement Class;

(d)    Appoints Plaintiff's Counsel in the Action, Laura Van Note from Cole & Van Note ("CVN") as Class Counsel for the Settlement Class;

(e)    Appoints Apex Class Action Administration. ("APEX") as the Settlement Administrator;

(f)    Approves the proposed Claims Form, Notice Plan and proposed forms of Class Notice (attached as Exhibits 1-4 to the Settlement Agreement);

(g)    Sets a schedule leading to the Court's evaluation of final approval the Settlement, including: (i) the date, time and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement (the "Fairness Hearing"); (ii) the deadline for Settlement Class Members to exclude themselves (i.e., opt out) from the Settlement; (iii) the deadline for Class Counsel to submit their Motion for Final Approval, petition for attorneys' fees and expenses and application for an Incentive Award; and (iv) the deadline for Settlement Class Members to object to the Settlement and any of the related petitions; and

(h)    Stays all proceedings in the Action except those relating to approval of the Settlement.

See the [Proposed] Preliminary Approval Order, filed herewith.

## II.    SUMMARY OF RELEVANT FACTUAL BACKGROUND

### A.    Summary of Investigation and Information Exchanged

Prior to filing suit, proposed Class Counsel conducted an extensive investigation into the Data Incident. Van Note Decl. ¶ 6. First, Class Counsel had to understand Defendant's business and the way in which individuals may have been impacted by exfiltration of their information *vis-à-vis* the Data Incident. *Id.* Further, Class Counsel investigated Defendant's response to the Data Incident and whether it was sufficient to understand Plaintiff's claims, researched the duties applicable to a company like Defendant, etc. After determining litigation of this matter was expected to be protracted, expensive, and draining of both sides' resources. *Id.* at 7. The Parties reached an agreement in principle and executed the Settlement Agreement on January 15, 2025. *Id.* at 8.

### B.    Summary of Class Counsel's Experience and Prior Cases

Class Counsel has extensive experience prosecuting class actions, including those involving data breaches. Van Note Decl. ¶¶ 21-26. Counsel for Defendant is also experienced in defending class actions. Thus, this enabled the Parties to negotiate a fair, reasonable and adequate settlement. *Id.* at ¶ 3.

### C.    Summary of Risks, Expenses and Complexity of Further Litigation

The risk, expense and complexity of further litigation is significant. Defendant would likely move for summary judgment. Even if Plaintiff defeated Defendant's Motion, Defendant would certainly oppose class certification and, if it prevailed, Class Members would receive nothing, not to mention that a standard might be formed that could hurt countless future victims of cybercrime. If the case were to proceed without settlement, there would be considerable expenses such as those for retention of experts to develop numerous factual and legal arguments regarding liability,

damages and injunctive relief, without any guarantee of relief for the Class.

**D.    Consideration Received in Exchange for Released Claims**

The consideration received in exchange for the release of Settlement Class Member claims is appropriate given the strength and weaknesses of Plaintiff's claims and the risks of continued litigation. First, the release applies only to claims related to the Data Incident. Moreover, the relief made available is significant given the risks Plaintiff and the Class faces.

Under the terms of the Settlement Agreement, Defendant has agreed to pay $400,000.00 to a non-reversionary fund (the "Settlement Fund") to resolve all claims brought in this Action. Settlement Agreement ("S.A.") § II, ¶ 59. The Settlement Fund shall be used to pay for (i) all Administrative Costs; (ii) any Taxes; (iii) any court-approved Incentive Payment and (iv) any court-approved Class Counsel Fees and Costs. S.A. § III, ¶ 64. Class Members will be able to submit for a Settlement payment of up to $5,000 reimbursement in the form of a Documented Loss Payment. S.A. § V, ¶ 68(a). Further, Class Members, who make a valid claim, will receive a *pro rata* share of the remaining Settlement Fund, once the above payments are distributed. S.A. § V, ¶ 68(b).

There will be no reversion of any kind to Defendant, and any left-over money in the Settlement Fund, if there is any, will be sent to a *cy pres* beneficiary that will be agreed to by the Parties and approved by the Court. S.A. § XII, ¶ 105. Finally, Defendant has agreed to equitable relief by undertaking substantial remedial measures regarding its data security process and procedures. S.A. § V, ¶ 70.

**III.    ARGUMENT**

This Settlement Agreement satisfies all of the relevant considerations for approval. At the preliminary approval stage, courts evaluate whether a proposed settlement is likely to be approved

as fair, reasonable and adequate, and whether the Settlement Class is likely to be certified for settlement purposes at the final approval stage. FED. R. CIV. P. 23(e)(1). FED. R. CIV. P. 23(e)(2)(A) and (B) focus on procedural fairness, i.e., the "conduct of the litigation and of the negotiations leading up to the proposed settlement." FRCP Rule 23, Advisory Committee's Note, 2018 Amendment.

FRCP Rules 23(e)(2)(C) and (D) focus on the substantive fairness of the settlement, the "relief that the settlement is expected to provide to class members" compared with "the cost and risk involved in pursuing a litigated outcome." *Id.* Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A) the class representative(s) and Plaintiff's Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, considering:

    i.   the costs, risks, and delay of trial and appeal;

    ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

    iv.   any agreement required to be identified under Rule 23(e)(3); and the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

Preliminary approval of the Settlement is warranted here. First, the Court will likely be able to finally approve the proposed Settlement—calling for substantial monetary relief and business practice changes—as fundamentally fair, reasonable, and adequate. Second, the Court will likely be able to certify the Settlement Class at the final approval stage pursuant to Rules 23(a)

and (b)(3). Third, the proposed Notice Plan satisfies the requirements of Rule 23(c)(2). Accordingly, the Court should grant Plaintiff's motion for preliminary approval of the class action settlement and direct notice to the Class.

### A.    The Settlement Agreement is Procedurally Fair

#### 1.    *Plaintiff and Class Counsel Adequately Represent Class Interests*

The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context*." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); accord Newberg & Rubenstein on Class Actions § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."). Procedural fairness is satisfied, in part, because "1) plaintiff's interests are not antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007). Plaintiff was a consumer whose personal information was compromised as a result of the Data Incident. Defendant's alleged failure to implement reasonable data security measures impacted not just Plaintiff's privacy, but the privacy of all Class Members. Van Note Decl. ¶ 4. As a result, Plaintiff and the Class seek the same relief from the same injury. *Id. See also Reid v. Donelan*, 297 F.R.D. 185, 191 (D. Mass. 2014) (holding plaintiff was an adequate class representative despite certain factual differences between plaintiff and class members because each sought the same relief).

Further, Class Counsel has prosecuted this Action from its inception and negotiated the proposed Settlement. Van Note Decl. ¶¶ 4-8. As reflected in Class Counsel's Firm Resume[2], CVN

---

[2] See Class Counsel's Firm Resume attached to Van Note Decl. as **Exhibit B**.

has decades of experience leading some of the most complex class actions, including data breach class actions on behalf of consumers. *Id.* at ¶¶ 21-26. Thus, Class Counsel's extensive class action experience, combined with their extensive efforts in this litigation, provide direct evidence in favor of procedural fairness.

### 2.    *The Settlement Agreement is the Product of Arm's Length Negotiations*

Courts may presume that a proposed settlement is procedurally fair when it is the result of arm's length negotiations. *In re Synchrony Fin. Sec. Litig., No. 18-cv-01818, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023)*. When applying the Rule 23(e)(2) factors to whether an Agreement is procedurally fair—courts determine "whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *Id.* That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which overlap with the Rule 23(e)(2). *See, e.g., Moses,* 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional Grinnell factors.").

Prior to negotiating the Settlement, Plaintiff and Class Counsel were well-informed about the strengths and weaknesses of claims made against Defendant. Van Note Decl. ¶¶ 6-7. Further, skilled and experienced counsel engaged in adversarial negotiations for each of the Parties. *Id.* at ¶ 8. Further, Defendant is represented by counsel with extensive experience in litigating technology-related actions. *Id.* at ¶ 3. Settlement negotiations took several weeks that resulted in a settlement in principle that was finalized on January 15, 2025. *Id.* at ¶¶ 8-9.  When viewed in their totality, the circumstances fully support the conclusion that the Settlement Agreement is procedurally fair.

B.    **The Settlement Agreement is Substantively Fair**

In the Second Circuit, the substantive fairness of a settlement is determined by the Court

considering the nine "*Grinnell* factor" balancing test:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of proceedings and the amount of discovery
> completed; (4) the risks of establishing liability; (5) the risks of establishing
> damages; (6) the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Detroit v. Grinnell Corp*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*")). The *Grinnell* factors

overlap with guidance provided by amended FRCP Rule 23(e)(2)(C), which focuses on whether,

"the relief provided for the class is adequate." FRCP Rule 23(e)(2)(C). The Court is also required

to confirm that the Settlement "treats class members equitably relative to each other." FRCP Rule

23(e)(2)(D). These factors are likely to weigh in favor of the Settlement's approval.

1.    ***The Grinnell Factors and FRCP Rule 23 Support Approval of the
        Settlement Agreement***

i.    The Costs, Risks and Delay of Trial and Appeal Favor Settlement

To determine whether a settlement provides adequate relief to the class, the Court must

evaluate "the costs, risks, and delay of trial and appeal," FRCP Rule 23(e)(2)(C)(i), which involves

considering whether continued litigation of this case would be "complex, expensive, and lengthy."

*In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); see

also Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial

and appeal"). The likelihood of success on the merits necessarily implicates other *Grinnell* factors

as well, including the risks of establishing liability, the risks of establishing damages, and the risks

of maintaining the class through the trial. Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with these *Grinnell* factors.

There are several risks in this case that could pose obstacles to achieving a favorable outcome for Plaintiff and the Settlement Class as litigation inherently involves risk. *See In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). If not for the Settlement, Plaintiff would immediately be faced with the potential for an adverse ruling on Defendant's motion for Summary Judgement or Defendant's opposition to Class Certification.

While Plaintiff believes he would prevail, there are risks involved in data breach litigation—a relatively new area of law—including proving standing and causation. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval); *see also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."). These are just a few of the substantive hurdles to prevailing on the merits.

Plaintiff likely would incur significant costs to prove his case through fact and expert discovery. *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (listing "more discovery" as one of the significant expenses for continuing a data breach litigation); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 212 (D. ME. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense").

Given the alleged misconduct, this Action would necessarily involve a battle of experts with respect to damages and other issues, likely escalating the litigation costs. The costs and risks

would only further increase as the Parties contest class certification and motions in limine and proceed through to trial and any related appeals.  In this Action, achieving total success on the merits and obtaining the full measure of Plaintiff's asserted damages is by no means guaranteed. The proposed Settlement, if approved, exchanges the extensive costs and a lengthy litigation timeline with prompt financial recovery and certainty for the Class, injunctive relief, finality as to the Parties, and the preservation of Court's time and resources that can be redirected elsewhere. The Settlement—valued at $400,000— is an appropriate balance against the strength of Plaintiff's case. *See Roberts v. TJX Companies, Inc.,* No. 13-cv13142, 2016 WL 8677312 at *8 (D. Mass. Sept. 30, 2016) (finding settlement more favorable where "claimants would be able to receive funds more immediately than if the case went to trial"). Because of the substantial costs, risks and delay in recovery associated with continued litigation, the first, fourth, fifth and sixth *Grinnell* factors and Rule 23(e)(2)(C)(i) support approval of the Settlement.

ii.    The Remaining *Grinnell* Factors Support Approval of Settlement

Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.,* 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).  Given the present posture of the Action, it is too early to evaluate the second *Grinnell* factor concerning the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this Settlement, Class Notice will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the Settlement. Notably, Plaintiff, whose interests are aligned with the Settlement Class, supports the Settlement.

As discussed above, the Settlement's relief is substantial. And, even if Plaintiff litigates and prevails on all aspects of his claims and damages theories—there remains an uncertain prospect. Indeed, even if Plaintiff cleared the numerous hurdles leading up to trial (at the cost of years of more litigation and, most likely, hundreds of thousands of dollars), a larger recovery is not certain. See *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (settlement was robust and immediate compared to some "speculative payment of a hypothetically larger amount years down the road").

Courts recognize that in the settlement approval context, a claim's hypothetical value must be discounted by risks and practical realities. Thus, the Second Circuit has noted that courts may approve settlements even where the recovery is a fraction of the amount recoverable at trial. See, *e.g., Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same); accord, e.g., *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Here, Plaintiff's counsel weighed the risks against the hypothetical value of the claims and, ultimately, secured a substantial monetary award of $400,000.00. Van Note Decl., ¶¶ 7-9. Because the Settlement Agreement provides this immediate and significant relief without the attendant risks of continued litigation, *Grinnell* factors eight and nine weigh in favor of approval.

The fact that Defendant might be able to withstand a greater judgment does not change the analysis. See *Grinnell,* 495 F.2d at 463 (factor seven). A defendant need not "empty its coffers

before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012); see also *In re Sinus Buster Products Consumer Litig.*, No. 12-cv-02429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[A]bility to pay is much less important than the other Grinnell factors, especially where the other factors weigh in favor of approving the settlement."); *Viafara v. MCIZ Corp.*, No. 12-cv-07452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (similar). This factor is neutral.

Therefore, as discussed above, Plaintiff faces numerous risks to prevailing, resulting in a steep discount of the present value of the case.  In light of these risks, the Settlement is within the bounds of what is reasonable.

### 2. *The Settlement Provides an Effective Method for Distributing Relief and Treats Class Members Equitably*

The Court should find that the Settlement's benefits are sufficiently robust to merit notice to Settlement Class Members. The $400,000 cash, non-reversionary common fund represents a significant monetary award. In this case, the Settlement provides a simple, straight-forward method for Class Members to file a claim and receive a payment, thus incentivizing participation. *See William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible"). Class Members will be required to submit a Claim Form providing their name and a unique claimant ID code (designed to deter fraudulent claims). S.A. §VII, ¶¶ 75-78.

Substantively, Class Members are able to make a Documented Cash Payment, up to $5,000 and after payment of Claims Administration, Fees and Incentive Awards, the remaining funds will be distributed equally to authorized claimants. S.A. § V, ¶ 68(a)-(b). In similar consumer class actions, courts routinely accept allocation plans that grant pro rata relief to class members. *See,*

12

*e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 186 (D. ME 2003) (approving a settlement granting relief in the form of equally distributed cash and retail discounts); *Giroux v. Essex Property Trust*, No. 16-cv-01722, 2019 WL 1207301, at *1 (N.D. Cal. Mar. 14, 2018) (approving a settlement granting class members a pro rata share of a settlement fund). Furthermore, Settlement Class Members are not required to submit documentary proof of losses to recover under the Settlement.

Any potential inequity in the Settlement is avoided through the use of a notice program that advises Class Members of their rights, including the impact of the releases. Should a Class Member wish not to be bound by the release, that Class Member may opt out of the Settlement. Because the distribution of the Settlement Fund and the Settlement's release wholly avoid any improper preferences, these factors weigh in favor of preliminary approval of the Settlement.

### 3. *The Scope of Release of the Settlement Weighs in Favor of Approval*

A final consideration is the scope of the Release. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 42 n.41 (E.D.N.Y. 2019) (although not a *Grinnell* factor, courts may look to the scope of the release in determining proposed settlement's reasonableness). In exchange for the relief described above, Plaintiff and the Settlement Class release all claims that have or could have been asserted against Defendant and relating to the facts, transactions, or events alleged in this action. Further, the Release is limited to the exact conduct alleged in the Complaint by Plaintiff, because it pertains to claims relating to the Data Incident. See S.A. § II ¶ 28. The Release does not immunize Defendant from liability for future events. In sum, the Release is calculated to "achieve a comprehensive settlement that [will] prevent relitigation of settled questions at the core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). This factor weighs in favor of approval

The Rule 23(e)(2) and *Grinnell* factors strongly support a finding that the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate."

**C.    The Court Should Conditionally Certify the Proposed Settlement Class**

For a settlement class to be certified, it must satisfy each requirement delineated in FRCP Rule 23(a), as well as at least one of the separate divisions of Rule 23(b). As explained below, the Settlement Class meets the requirements of FRCP Rule 23(a) and FRCP Rule 23(b)(3) for preliminary and final approval. Accordingly, the Court should conditionally certify the Settlement Class.

*1.    The Requirements of FRCP Rule 23(a) are Satisfied*

Class certification under FRCP Rule 23(a) requires: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The Settlement Class satisfies each of these requirements.

i.    The Settlement Class is so Numerous the Joinder of Individual Members is Impracticable

FRCP Rule 23(a)(1) requires that the class be so numerous to make joinder of its members "impracticable." FED. R. CIV. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). There are approximately 7,275 individuals within the Settlement Class. Because joinder would be impracticable, Rule 23(a)(1) is satisfied.

ii.     There are Questions of Law and Fact Common to the Settlement Class

Under Rule 23(a)(2), Plaintiff must show that "questions of law or fact common to the [proposed] class" exist. FED. R. CIV. P. 23(a)(2). Commonality requires that the class claims "depend upon a common contention" that "must be of such a nature that it is capable of class wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "For purposes of Rule 23(a)(2) even a single common question will do." *Id.* Plaintiff needs only show that his injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, there are several questions of law and fact are common to all Settlement Class Members, including (i) whether Defendant violated common law duties, consumer protection laws, or other legal obligations and industry standards; (ii) whether Defendant failed to properly secure and safeguard Settlement Class Members' personal information; (iii) whether Settlement Class Members are entitled to damages and (iv) the appropriate measure of such damages and relief. The proof required to establish Defendant's alleged unlawful conduct is common to all members of the Settlement Class and therefore satisfies Rule 23(a)(2).

iii.     Representative Plaintiff's Claims are Typical of the Claims of the Settlement Class

FRCP Rule 23(a)(3) requires that class representatives' claims be "typical" of Settlement Class Members' claims. FED. R. CIV. P. 23(a)(3). That requirement is satisfied by showing that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler*

*Litig.*, No. 10-cv-07493, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); see also *Fogarazzao v. Lehman Bros*., 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement 'is not demanding.").  Here, the typicality requirement is met because (1) Plaintiff's claims stem from the same Incident as the claims of the Settlement Class Members; and (2) such disclosure affected Plaintiff and Settlement Class Members in substantially the same way. See *Robidoux*, 987 F.2d at 936–37. Defendant's alleged failure to adopt and maintain reasonable security measures to protect customer personal information and, as a result, rely on the same legal theories as the Settlement Class. This is sufficient to satisfy Rule 23(a)(3).

iv.    <u>The Interest of Plaintiff and Class Counsel are Aligned with the Interests of the Settlement Class</u>

Under Rule 23(a)(4), the adequate representation requirement is satisfied when the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that: (1) class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A*., 126 F.3d at 378. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc*., 181 F.R.D. 243, 259 (S.D.N.Y. 1998). As described above, Plaintiff and Class Counsel satisfy the adequacy requirement.

Accordingly, Plaintiff's Counsel satisfies Rule 23(a)(4)'s adequacy requirement. See, e.g., *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.,* 241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class.").

**2.**    ***The Requirements of Rule 23(b)(3) are Satisfied***

Under FRCP Rule 23(b)(3), Plaintiff must establish: (1) "that the questions of law or fact

16

common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). These requirements are satisfied here.

i.    <u>Questions Common to All Settlement Class Members Predominate<br>Over Any Potential Individual Questions</u>

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "[A] plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). In the settlement context, moreover, the potential for trial manageability problems posed by individualized issues falls away because "the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620; accord, e.g., *Tart v. Lions Gate Entertainment Corp.*, No. 14-8004, 2015 WL 5945846 at *4 (S.D.N.Y. Oct. 13, 2015) ("[T]he predominance inquiry will sometimes be easier to satisfy in the settlement context.").

At the heart of Plaintiff's claims is whether Defendant failed to adopt and maintain reasonable security measures to protect personal information, promptly detect the Data Incident, remedy and mitigate the effects of the Data Incident, and provide timely notification to affected persons. These questions are common and predominate over individualized issues.

ii.    <u>A Class Action is the Superior Method to Fairly and Efficiently<br>Adjudicate the Matter</u>

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly

17

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for at least three reasons.

First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661.

Second, a class action "will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser v. Merrill Lynch & Co., Incr*, No. 13-1531, 2014 WL 4816134 at *3 (S.D.N.Y. Apr. 28, 2017).

Third, the expense and burden of litigating highly technical data breach claims, compared against the modest potential for individual recovery, make it impractical for the Settlement Class Members to seek redress on an individual basis. In a class action, litigation is viable because costs are spread across the entire class. See, e.g., Tart, 2015 WL 5945846, at *5.

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

### D.   <u>The Notice Plan and Class Notice Should Be Approved</u>

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where seeking certification of a Rule 23(b)(3) settlement class, the notice must also comply with Rule 23(c)(2)(B), which requires "[a]t a minimum" that the notice inform class members of: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request

exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). The Court is given broad power over which procedures to use for providing notice, so long as the procedures are reasonable and comport with due process. *Wal-Mart Stores*, 396 F.3d at 113; *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

The Settlement Agreement proposes that the Court appoint Apex to oversee implementation of the Notice Plan, as well as processing Settlement Class Member claims and payments. SA § II, ¶ 55. The Parties selected Apex after reviewing competing proposals submitted by four claims and notice administrators. See Van Note Decl. ¶ 16. The proposed Notice Plan and related forms of notice[3] are "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314* (1950). The Parties propose a robust, state-of-the-art notice program, developed with Apex's assistance, that includes direct notice to Settlement Class Members via U.S. mail and email that will include an electronic link to the Claims Form. Plaintiff understands from Defendant that it has mailing addresses for the entire Settlement Class. See Van Note Decl. ¶ 17.

Apex will also establish a dedicated Settlement Website through which Settlement Class members can access case documents and obtain more detailed information about the Settlement, including important deadlines, such as the date for opting out or objecting to the Settlement. See Van Note Decl. ¶ 18. The Settlement Website will also permit Settlement Class Members to complete or file Claim Forms online through a simple process. *Id.*

---

[3] The Email, Notice, Postcard Notice, Long Form Notice and Claim Form are attached to the Settlement Agreement as **Exhibits 1-4**.

Further, the proposed notice program defines the Settlement Class; explains all Settlement Class Members' rights, the Parties' releases, the applicable deadlines and describes in detail the injunctive and monetary terms of the Settlement, including the procedures for allocating and distributing Settlement funds among the Settlement Class members. *Id.* at ¶ 19. It will plainly indicate the time and place of the Fairness Hearing, and explain the methods for objecting to, or opting out of, the Settlement. *Id.* It details the provisions for payment of Attorneys' Fees and Expenses and the Class Representative Service Award, and it provides contact information for Plaintiff's Counsel. *Id.* This is a sufficient notice program. See *George v. Shamrock Saloon II, LLC*, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) ("Class notice need only describe the terms of the settlement generally, which is a minimal requirement.").

## IV.    PROPOSED SCHEDULE

Plaintiff proposes the following schedule leading to Final Approval of the Settlement:

| Event | Date |
|---|---|
| Settlement Administrator sends Notice to the Settlement Class (the "Notice Date") | Within 30 after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to opt out or object to the proposed Settlement | Within 90 after the Notice Date |
| Last day for Settlement Class Members to submit Claim Forms | 120 days after the Notice Date |
| The Notice Program shall be completed | No later than 45 days before the Final Approval Hearing |
| Date by which Class Counsel is to file Motion for Final Approval of Settlement and Petition for Award of Attorneys' Fees, Expenses and Service Awards | No later than 30 days prior to the Final Approval Hearing |
| Final Approval Hearing | TBD |

## V.    CONCLUSION

Plaintiff respectfully requests that the Court enter the accompanying proposed Order that: (a) preliminarily approves the Settlement, subject to later, final approval; (b) conditionally certifies a

Settlement Class on the claims against Defendant; (c) appoints Plaintiff as representative of the Settlement Class; (d) appoints Plaintiff's Counsel as Class Counsel for the Settlement Class; (e) appoints CPT as the Settlement Administrator for the Settlement; (f) approves the proposed forms of Class Notice to the Settlement Class of the Settlement and the proposed Class Notice plan and (g) sets a schedule leading to the Court's consideration of Final Approval of the Settlement.

Dated: January 23, 2025          By:     _/s/ Laura Van Note_
                                          Laura Van Note, Esq. (CA S.B. #310160)*
                                          **COLE & VAN NOTE**
                                          555 12th Street, Suite 2100
                                          Oakland, California 94607
                                          Telephone:   (510) 891-9800
                                          Facsimile:   (510) 891-7030
                                          Email:       lvn@colevannote.com

                                          Frank G. Usseglio, Esq. (CT S.B. # 404136)
                                          **KENNY, OKEEFE USSEGL**
                                          Capitol Place
                                          21 Oak St., Suite 208
                                          Hartford, CT 06106
                                          Telephone:   (860) 246-2700
                                          Email:       FUsseglio@kou-law.com

                                          _Attorneys for Representative Plaintiff and the_
                                          _Plaintiff Class_

                                          _*Admitted pro hac vice_

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on January 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

*/s/ Laura Van Note*
Laura Van Note, Esq.