# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY ORTEGA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>WATERFORD COUNTY SCHOOL, INC.,<br><br>    Defendant. | **Case No. 3:24-cv-01334-MPS** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.    INTRODUCTION................................................................................................1

II.   BACKGROUND ................................................................................................2

   A.  Summary of Allegations................................................................................2

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL......................2

   A.  The Settlement is Procedurally Fair................................................................2

   B.  The Settlement Class has been vigorously represented .........................................3

   C.  The Settlement was negotiated at arm's length after the exchange of informal discovery. ................................................................................................3

   D.  The Settlement provides meaningful relief to the class. ........................................4

      1.   The Settlement treats Settlement Class Members equitably. ............................7

      2.   The remaining factors weigh in favor of approval. ......................................7

IV.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED ...........................................9

   A.  The Requirements of Rule 23(a) are satisfied.....................................................9

      1.   Numerosity is Satisfied. ..................................................................10

      2.   Commonality is Satisfied. ................................................................10

      3.   Typicality is Satisfied. ....................................................................11

      4.   Adequacy of Representation is Satisfied.................................................12

   B.  The Settlement Class Meets All Rule 23(b)(3) Requirements. .................................13

      1.   Predominance ............................................................................13

      2.   Superiority ................................................................................14

V.   ATTORNEYS' FEES AND COSTS ...................................................................15

VI.  REQUEST FOR CLASS REPRESENTATIVE SERVICE AWARD ........................15

VII. CONCLUSION .............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc.*,
    521 U.S. 591 (1997).................................................................................................. 13

*City of Detroit, v. Grinnell Corporation*,
    495 F.2d 448 (2d Cir. 1977)................................................................................... passim

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc*,
    502 F.3d 91 (2d Cir. 2007)............................................................................................ 3

*Damassia v. Duane Read, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................ 12

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................................ 11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................ 7

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)......................................... 7

*Hicks v. Morgan Stanley & Co.*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................................. 5

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................... 8

*In re IMAX Sec. Litigation*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................. 8

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass 2010).................................................................................... 14

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................................. 8

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
    241 F.R.D. 185 (S.D.N.Y. 2007) ............................................................................... 13

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)....................................................................................... 14

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10-cv-07493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ............................................. 11

*In re Packaged Ice Antitrust Litig.*,
  322 F.R.D. 276 (E.D. Mich 2017) ................................................................................ 8

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................ 5

*In re Sinus Buster Products Consumer Litig.*,
  No. 12-cv-02429, 2014 WL 5819921(E.D.N.Y. Nov. 10, 2014) ............................................. 8

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................................... 10

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) .............................................................................. 12

*Matheson v. T-Bone Rest., LLC*,
  No. 09-cv-04214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ........................................... 4

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08-cv-08713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................. 4

*Meredith Corp. v. SESAC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................................... 15

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................................... 11

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ................................................................................... 10

*Tart v. Lions Gate Entm't Corp* ,
  2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) ................................................................. 14

*TBK Partners, Ltd. v. Western Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ................................................................................... 9

*Viafara v. MCIZ Corp.*,
  No. 12-cv-07452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) .............................................. 8

*Zeltser v. Merrill Lynch & Co.*,
  2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ............................................................... 15

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................... 10, 11, 12

Fed. R. Civ. P. 23(b) ......................................................................................... 13, 14

Fed. R. Civ. P. 23(e) ....................................................................................... 2, 5, 6, 7

**Treatises**

4 NEWBERG ON CLASS ACTIONS § 13:50 (6th ed. 2022) ..................................................... 3

## I.    <u>INTRODUCTION</u>

On May 16, 2025, this Court preliminarily approved the Settlement between Plaintiff Gary Ortega and Defendant Waterford County School, Inc. ("Defendant") and ordered that notice be given to the Class. (Doc. 31). The Settlement negotiated on behalf of 7,253 Class Members establishes a $400,000 Settlement Fund. Settlement Class Members who submitted a valid claim may elect one of the following benefits that will be paid from the Settlement Fund: (i) monetary reimbursement of up to $5,000 for Documented Losses resulting from the Data Breach, or (ii) an alternative *pro rata* cash payment.

After this Court granted preliminary approval, Settlement Administrator Apex Class Action, LLC, ("Apex") successfully disseminated Notice to the Settlement Class. Notice of the Settlement reached the vast majority the Class (87.7%), easily meeting the due process standard. *See* Declaration of Stacy Shim Regarding Implementation of Notice and Claims Administration (Shim Decl.) ¶¶ 8-14. To date, Apex has received 109 valid claim forms. Shim Decl. ¶ 17. Importantly, *no Settlement Class Members have opted out or objected*, which demonstrates tremendous support for the Settlement. Shim Decl. ¶¶ 15-16.

As discussed below, the proposed Settlement satisfies Federal Rules of Civil Procedure Rule 23(e)(2)'s requirements that a class settlement be fair, reasonable, and adequate, and Plaintiff respectfully requests that the Court grant this Motion and issue final approval of the Settlement. Plaintiff and Class Counsel further request that the Court approve a reasonable service award of $5,000 to the Representative Plaintiff, attorneys' fees of $133,320, litigation expenses of $4,493.67. Finally, Plaintiff seeks reimbursement of Apex's Settlement Administration Costs of $21,990.

## II.    BACKGROUND

### A.  Summary of Allegations

This is a putative class action arising from an Incident whereby Plaintiff alleges an unauthorized third-party was able to gain access to Defendant's computer network, which Defendant first discovered on or about October 5, 2023, and remove certain files containing sensitive information stored therein. The Incident allegedly impacted thousands of people. The information compromised in the Incident potentially included individuals' full names, treatment information, provider names, patient identification numbers, health insurance information, treatment cost information, and health insurance numbers.

On September 25, 2024, Plaintiff Gart Ortega filed a Class Action Complaint in the United States District Court for the District of Connecticut against Defendant, asserting claims for negligence, negligence per se, breach of implied contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment.

In the time shortly following the filing, the Parties began discussing possible early resolution and subsequently agreed to mediate the matter.

## III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.  The Settlement is Procedurally Fair

The Court first must consider procedural fairness, which is comprised of two considerations: (i) whether "the class representatives and class counsel have adequately represented the class" and (ii) whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also* the traditional factors described in *City of Detroit, v. Grinnell Corporation* 495 F.2d 448, 463 (2d Cir. 1977) ("*Grinnell*") (the third *Grinnell* factor—*i.e.*, the stage of the proceedings and the amount of discovery completed—overlaps with Rule 23(e)(2)(B)'s "negotiated at arms-length" factor).

### B. The Settlement Class has been vigorously represented

Adequacy of representation requires consideration of whether "1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc* 502 F.3d 91, 99 (2d Cir. 2007). Plaintiff's interests are aligned with the Settlement Class. Each Plaintiff is a current or former customer of Defendant whose Private Information was compromised as a result of the Incident. Defendant's alleged failure to implement reasonable data security measures impacted not just Plaintiff's privacy, but the privacy of all Class Members, and as a result, Plaintiff and the Class seek the same relief from the same injury.

Plaintiff's Counsel engaged in a thorough pre-suit investigation and significant informal discovery prior to this Settlement, which informed their understanding of the case's merits. Decl. of Laura Van Note in Support of Motion for Preliminary Approval, (hereinafter "Van Note Decl."), ¶ 10. Plaintiff's Counsel is eminently qualified to conduct this litigation and as discussed below, has done so vigorously to date.

### C. The Settlement was negotiated at arm's length after the exchange of informal discovery.

This Settlement bears all of the qualities of arm's length negotiations. First, the Settlement negotiations were intense and adversarial. *See* William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:50 (6th ed. 2022) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator").

Second, prior to negotiating the Settlement, Plaintiff and Plaintiff's Counsel were well informed about the strengths and weaknesses of their claims against Defendant. Plaintiff's Counsel's negotiating strategy benefited from the information obtained from Defendant's public

disclosures, their independent investigation, and the pre-negotiation information requests. *Id.*, ¶ 10.

Lastly, skilled and experienced counsel engaged in adversarial negotiations for each of the parties. Defendant is represented by counsel with extensive experience in privacy and data security law, and with complex class litigation generally. Settlement negotiations took several months and resulted in an excellent monetary settlement for the Class. *Id.*, ¶ 11. When viewed in their totality, the circumstances fully support the conclusion that the settlement is procedurally fair.

Although formal discovery did not take place, the Parties informally exchanged information before, between, and after their settlement negotiations bearing on the merits of Plaintiff's claims, the size of the class, and the scope of security services employed by Defendant. Accordingly, Plaintiff's Counsel—attorneys with considerable experience in assessing the strengths and weaknesses of data breach cases—are well-informed about the strengths and risks of the claims, as well as their value. *Id.*, ¶¶ 8, 11.

This thoroughness and consistently adversarial posture favor final approval. *See, e.g.*, *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-08713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) ("efficient informal exchange of information" sufficient to recommend settlement approval); *Matheson v. T-Bone Rest., LLC*, No. 09-cv-04214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (informal discovery allowed plaintiffs to "weigh the strengths and weaknesses of their claims"). As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair.

### D. The Settlement provides meaningful relief to the class.

The Court should find that the Settlement's benefits are sufficiently robust. The $400,000 cash, non-reversionary common fund Settlement represents a significant monetary award.  Such relief is particularly significant considering the costs and risks of further litigation, the proposed

method of distributing relief to the Settlement Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. Fed. R. Civ. P. 23(e)(2)(i)–(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors one, four through six, eight, and nine).

**Risks of further litigation**. Continued litigation of this case would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial and appeal"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (Rule 23(e)(2)(C)'s "risks" factor overlaps with *Grinnell* factors one, four, five, and six). Indeed, the Settlement resolves a complex class action that has been and would continue to be costly to litigate through trial. Van Note Decl., ¶¶ 14-17; *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (settlement avoids costs associated with "inherently complex" class actions); *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (similar).  Litigation inherently involves risk. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Plaintiff likely would need to retain expensive forensics experts and litigate multiple *Daubert* motions. Certifying a class, surviving summary judgment, and proving liability at trial likely would require exhaustive briefing and additional first- and third-party discovery—*i.e.*, discovery from Defendant and any third-party vendors handling or contracted to handle the Private Information of the proposed Class Members. Achieving a class-wide recovery like that provided by the Settlement also would require maintaining class status through trial—a difficult and uncertain prospect. And even if the Court were to certify the Class (and deny efforts to decertify it thereafter), any initially favorable result would likely be delayed and possibly defeated by any Rule 23(f) petition.

**Risks of establishing damages**. At least three additional risks attend Plaintiff's damages claims. *See Grinnell*, 495 F.2d at 463 (factor five). Proving actual damages likely would require substantial discovery into the nuances of how exfiltrated Private Information is first exfiltrated, marketed, and then sold, for what purposes it is used, at what cost this comes to the Plaintiff, and at what cost these negative actions would have been deterred or prevented by the imposition of other security precautions. In sum, the Settlement eliminates these risks while providing significant relief to the Settlement Class. These factors sharply weigh in favor of final approval.

**Proposed method of distributing relief**. The proposed method of distributing relief to the class must be "effective." Fed. R. Civ. P. 23(e)(2)(C)(ii). APEX Class Action Administration has designed a comprehensive Notice Plan that provides the best notice to the Settlement Class practicable under the circumstances. SA §§ II(G), II(I)(2). Settlement Class Members will submit claims using a simple, straightforward Claim Form, designed to maximize the number of claims made. See SA § II(I)(3); SA, Ex. C. Those who submit valid claims will receive payment by electronic means or by mailed checks. SA § II(H)(5)(a).

**Attorneys' Fees and Service Awards**. Plaintiff's Counsel may move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii). In accordance with the Settlement's terms and the schedule set by the Court, Plaintiff's counsel separately applied for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund (*i.e*., $133,320). *See* S.A. ¶ 103. Plaintiff will also apply for a service award of up to $5,000. The Settlement is not conditioned upon award of fees or a service award. *Id. ¶ 104*.

**No other agreements**. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement. Van Note Decl., ¶ 11.

1.     **The Settlement treats Settlement Class Members equitably.**

The proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Defendant will establish a common fund of $400.000.00, from which payments will be distributed to Settlement Class Members who submit valid claims based on documented Out-of-Pocket Losses (up to $5,000 per person) or a claim for Non-Documented relief payable on a pro rata basis. S.A. ¶¶ 63, 68-69. This factor thus weighs in favor of final approval.

2.     **The remaining factors weigh in favor of approval.**

***Grinnell* factors eight and nine**. Courts also evaluate the reasonableness of a proposed settlement in light of the best possible recovery, discounted by the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

As discussed above, the Settlement's relief is substantial. S.A. ¶¶68-70. That is so, notwithstanding Defendant's hypothetical exposure should Plaintiff litigate and prevail on all aspects of his claims and damages theories—an uncertain prospect. Indeed, even if Plaintiff cleared the numerous hurdles leading up to trial (at the cost of years of more litigation and, most likely, hundreds of thousands of dollars), a larger recovery is not certain. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (settlement was robust and immediate compared to some "speculative payment of a hypothetically larger amount years down the road").

Courts recognize that in the settlement approval context, a claim's hypothetical value must be discounted by risks and practical realities. Thus, the Second Circuit has noted that courts may approve settlements even where the recovery is a fraction of the amount recoverable at trial. *See, e.g.*, *Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same); *accord, e.g.*, *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276 (E.D. Mich 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Here, Plaintiff's Counsel weighed the risks against the hypothetical value of their claims and, ultimately, secured a substantial monetary award of $400,000.00. Van Note Decl., ¶¶ 8, 25, 33. Because the Settlement Agreement provides this immediate and significant relief without the attendant risks of continued litigation, *Grinnell* factors eight and nine weigh in favor of approval.

**Grinnell factor seven**. The fact that Defendant might be able to withstand a greater judgment does not change the analysis. *See Grinnell*, 495 F.2d at 463 (factor seven). A defendant need not "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litigation* 283 F.R.D. 178, 191 (S.D.N.Y. 2012); *see also In re Sinus Buster Products Consumer Litig.*, No. 12-cv-02429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[A]bility to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement."); *Viafara v. MCIZ Corp.*, No. 12-cv-07452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (similar). This factor is neutral.

**Scope of release**. A final consideration is the scope of the Release. *See In re Payment*

*Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 42 n.41 (although not a *Grinnell* factor, courts may look to the scope of the release in determining proposed settlement's reasonableness). In exchange for the relief described above, Plaintiff and the Settlement Class release all claims that have or could have been asserted against Defendant and relating to the facts, transactions, or events alleged in this action. Further, the Release is limited to the exact conduct alleged in the Amended Complaint by Plaintiff, because it pertains to claims "relating to the Data Security Incident." *See* SA § II(A)(6). The Release does not immunize Defendant from liability for future events. In sum, the Release is calculated to "achieve a comprehensive settlement that [will] prevent re-litigation of settled questions at the core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). This factor weighs in favor of approval.

Rule 23(e)(2) and *Grinnell* factors strongly support a finding that the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate."

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Class certification is a two-step process: first, Plaintiff must establish numerosity, commonality, typicality, and adequacy under Rule 23(a); second, Plaintiff must establish that one of the bases for certification in Rule 23(b) is met. Plaintiff contends, and Defendant does not dispute for settlement purposes only, that the proposed Settlement Class meets these requirements.

### A. The Requirements of Rule 23(a) are satisfied.

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. FED. R. CIV. P. 23(a). The Settlement Class meets each prerequisite and, therefore, satisfies Rule 23(a).

### 1.    Numerosity is Satisfied.

Under Rule 23(a)(1), Plaintiff must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, numerosity is easily satisfied, as the Settlement Class includes approximately 7,253 people. *See* Van Note Decl., ¶ 3.

### 2.    Commonality is Satisfied.

Under Rule 23(a)(2), Plaintiff must show that "questions of law or fact common to the [proposed] class" exist. FED. R. CIV. P. 23(a)(2). Commonality requires that the class claims "depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "For purposes of Rule 23(a)(2) even a single common question will do." *Id.* (cleaned up). Plaintiff need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, many significant common questions of law and fact exist, including:

1) Whether Defendant had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII;

2) Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3) Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4) Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

6) Whether Defendant adequately, promptly, and accurately informed Representative Plaintiff and Class Members that their PHI/PII had been compromised;

7) How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII of Representative Plaintiff and Class Members;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Representative Plaintiff's and Class Members' PHI/PII;

11) Whether Representative Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct; and

12) Whether Representative Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquiries is Defendant's common course of conduct, *i.e.*, its disclosure of Plaintiff's and Settlement Class Members' PII.

### 3.    Typicality is Satisfied.

Typicality requires the representative party's claims to be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). That requirement is satisfied by showing that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-07493, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *see also Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement 'is not demanding.").    Here, the typicality

requirement is met because (1) Plaintiff's claims stem from the same Incident as the claims of the Settlement Class Members; and (2) such disclosure affected Plaintiff and Settlement Class Members in substantially the same way. *See Robidoux*, 987 F.2d at 936–37.

### 4. Adequacy of Representation is Satisfied.

Under Rule 23(a)(4), the adequate representation requirement is satisfied when the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A*., 126 F.3d at 378. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc*., 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal citation omitted).

First, Plaintiff has no interest that is in conflict with the Settlement Class, as he is equally interested in obtaining relief for Defendant's alleged misconduct and ensuring that Defendant reforms its business practices. Van Note Decl., ¶ 22. Plaintiff and the Settlement Class members were allegedly injured in the same manner based on their relationship with Defendant. *Cf. Damassia v. Duane Read, Inc.,* 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (plaintiffs' claims being typical of the class is "strong evidence that their interests are not antagonistic"). Further, throughout the pendency of this action, Plaintiff has adequately and vigorously represented his fellow Class Members. He has spent time assisting his counsel, answering counsel's questions, and aiding with litigating this case. Van Note Decl., ¶ 22. These same facts support Plaintiff's appointment as Class Representatives for the Settlement Class.

Second, Plaintiff's Counsel has extensive experience litigating, trying, and settling class actions, including consumer data breach cases like this, throughout the country. *Id*., ¶¶ 28-30. Courts have recognized Plaintiff's Counsel's experience in complex class litigation and their

skilled and effective representation. Plaintiff's counsel had sufficient information at their disposal before finalizing the Settlement Agreement and thus were able to balance the benefits of settlement against the risks of litigation. *Id.*, ¶¶ 32-33. They have invested considerable time and resources into the prosecution of this case and are capable and committed to achieving the best result for Plaintiff and the Settlement Class. *Id.*, ¶ 20. Accordingly, Plaintiff's Counsel satisfies Rule 23(a)(4)'s adequacy requirement. *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class.").

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering Plaintiff's Counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3) and confirmed under Rule 23(g)(1). *See generally* Van Note Decl.; SA, Exs. 2-4.

## B. The Settlement Class Meets All Rule 23(b)(3) Requirements.

Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. 591, 623 (1997) (citation omitted). "[A] plaintiff must establish that the issues in the class

action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases,* 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted). In the settlement context, moreover, the potential for trial manageability problems posed by individualized issues falls away because "the proposal is that there be no trial." *Amchem Prods., Inc.,* 521 U.S. at 620; *accord, e.g.,* *Tart v. Lions Gate Entm't Corp,* 2015 WL 5945846, at *4 (S.D.N.Y. Oct. 13, 2015) ("[T]he predominance inquiry will sometimes be easier to satisfy in the settlement context.").

Here, common questions predominate over any questions that may affect individual Settlement Class Members. The core questions are whether Defendant had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII, and whether Defendant breached this duty. However these core questions are answered, all Settlement Class Members will be entitled to the same legal remedies premised on the same alleged wrongdoing. The issues affecting every Settlement Class Member are substantially the same. Those issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). This case thus falls within "the types of cases [that] are uniquely well-suited to class adjudication"—*i.e.*, those based on uniform violation of common statutory rights. *See In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45 (D. Mass 2010).

### 2.    Superiority

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for at least three reasons.

First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions

substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC* 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (citation omitted).

Second, a class action "will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014) (citation omitted).

Third, the expense and burden of litigating highly technical data breach claims, compared against the modest potential for individual recovery, make it impractical for the Settlement Class Members to seek redress on an individual basis. In a class action, litigation is viable because costs are spread across the entire class. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5.

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

## V.    ATTORNEYS' FEES AND COSTS

Plaintiff's Counsel separately filed a Motion for Attorneys' Fees and Costs which will be heard on the same date as the Final Approval Hearing. As detailed in that Motion, Plaintiff's Counsel seeks a total award of $133,320 and reimbursement of costs totaling $4,493.67.

## VI.    REQUEST FOR CLASS REPRESENTATIVE SERVICE AWARD

The proposed class representative service award negotiated here also falls well within the range of those provided in similar settlement conditions, particularly in light of awards approved by courts within this jurisdiction. Plaintiff seeks the Court's approval of the Class Representative Service Awards of $5,000.

## VII.    <u>CONCLUSION</u>

Plaintiff respectfully requests the Court enter the proposed order granting final approval and certifying the Settlement Class for settlement purposes.

Dated: October 21, 2025

<u>/s/Laura Van Note</u>
Laura Van Note, Esq. (CA S.B.# 310160)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: lvn@colevannote.com

Frank G. Usseglio, Esq. (CT S.B. # 404136)
**KENNY, OKEEFE & USSEGLIO, P.C.**
Capitol Place 21 Oak St., Suite 208
Hartford, CT 06106
Telephone: (860) 246-2700
Email:FUsseglio@kou-law.com

Attorney for Representative Plaintiff
And the Plaintiff Class

*Admitted  *Pro Hac Vice*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 21, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify the foregoing

document is being served today on all counsel of record in this case via transmission of

Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to

their respective emails per the below service list.

*/s/Laura Grace Van Note*
Laura Grace Van Note, Esq.